**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| CF Entertainment, Inc., | Case No.: 1:20-cv-2393 |
| Plaintiff, | |
| v. | |
| The Nielsen Company (US), LLC | **JURY TRIAL DEMANDED** |
| Defendant. | |

## COMPLAINT

Plaintiff CF Entertainment, Inc. ("CF Entertainment"), by and through its undersigned counsel, hereby submits this complaint against Defendant The Nielsen Company (US), LLC ("Nielsen"), and respectfully alleges as follows:

## NATURE OF THE DISPUTE

1.      This action arises out of yet another attempt by Nielsen to abuse its monopolistic power over television ratings to extort a massive windfall from a smaller market participant. In 2017, CF Entertainment and Nielsen entered into a contractual amendment to their original 2007 agreement in which Nielsen agreed to provide, among other things, ratings services for any cable networks that CF Entertainment owned or acquired for a contractually specified fee of roughly $41,000 per month. But after CF Entertainment acquired The Weather Channel in 2018 and requested those ratings services and applicable fees for the company's new cable network, Nielsen refused to honor the contractually specified fee. Instead, without any basis in the operative contract, Nielsen demanded that CF Entertainment pay a monthly fee that was more than ***ten times*** the fee set forth in the 2017 amendment—a sum that would result in over $30 million in illicit gain

for Nielsen, and far greater, catastrophic economic damage to CF Entertainment's business. And if CF Entertainment refused to accede to Nielsen's extortionist demands, Nielsen threatened to suspend its ratings services, without which CF Entertainment could not operate and would lose hundreds of millions of dollars in advertising revenues, sponsorship and subscriber revenues.

2. Regrettably, CF Entertainment and companies like it cannot survive without Nielsen's ratings services, as television advertising is sold based on viewership as measured by Nielsen. As an owner and operator of cable networks and stations, CF Entertainment relies heavily and primarily on advertising revenue to fund its operations. To collect advertising revenue, however, CF Entertainment must provide proof of performance—evidence that a sufficient number of viewers were tuned into the network at the time the commercial airs. National television advertisers, such as Procter & Gamble, Ford, and many others accept only Nielsen-supplied ratings as proof of performance. Without this performance data, CF Entertainment would find itself in the untenable position of airing commercials but being unable to collect any advertising revenues. Nielsen has a monopoly over the provision of this performance data, and thus power over the success or failure of CF Entertainment's business.

3. For several years, CF Entertainment has bowed to Nielsen's heavy-handed tactics. In particular, following CF Entertainment's acquisition of The Weather Channel in March 2018, CF Entertainment was forced to submit to Nielsen's demand that CF Entertainment sign an additional "amendment" to the parties' existing agreement, in which CF Entertainment temporarily agreed to pay Nielsen nearly $500,000 per month—an unconscionable contract if there ever was one. But even after the expiration of this 2018 amendment, Nielsen still refused to revert to the agreed-upon fee schedule in the 2017 agreement and, instead, simply continued to demand that CF Entertainment pay roughly $500,000 a month for Nielsen's ratings services—or else be shut off.

4.      Indeed, on the same day that CF Entertainment filed this suit, it wired $2.375 million to Nielsen to satisfy the balance of "late payments" that accrued based on this exorbitant fee schedule.  That payment, like each one it has made to Nielsen since April 2018, was effectively a ransom that CF Entertainment had to make to keep The Weather Channel on air.

5.      CF Entertainment will not be held hostage any longer, and it will no longer sit idly by and accede to Nielsen's extortionist conduct.  By this action, CF Entertainment seeks, first and foremost, a declaratory judgment that: (i) Nielsen is obligated to provide rating services for The Weather Channel at the contractually specified rate set forth in the 2017 amendment between Nielsen and CF Entertainment; and (ii) the 2018 amendment is void as an unconscionable contract. In addition, CF Entertainment seeks (i) damages reflecting the difference between the amounts that CF Entertainment should have paid under the 2017 amendment and the amounts CF Entertainment was forced to pay since April 2018, including its most recent payment of $2.375 million for Nielsen's services; (ii) damages for Nielsen's violation of the California Business and Professions Code section 17200 for unfair and unlawful conduct; and (iii) an order preliminarily enjoining Nielsen from terminating any services it is currently providing to CF Entertainment or in any way altering the nature of the services currently provided, including any services it is currently providing for The Weather Channel during the pendency of this action.

## THE PARTIES

6.      CF Entertainment is incorporated under the laws of the state of California, with its principal place of business located at 1925 Century Park E, 10th Floor, Century City, CA, 90067.

7.      Nielsen is a limited liability company incorporated under the laws of the state of Delaware, with its principal place of business located at 85 Broad St., New York, New York, 10004.

## JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332.  The parties are citizens of different states and the amount in controversy exceeds $75,000. Nielsen has wrongfully extorted millions of dollars in extra-contractual payments from CF Entertainment since April 2018, surpassing the threshold amount in controversy requirement.

9.     This Court has personal jurisdiction over Nielsen because, in the parties' original 2007 services agreement, Nielsen and CF Entertainment agreed to the exclusive jurisdiction of the State and Federal courts in Chicago, Illinois for purposes of determining all disputes arising under or with respect to the parties' agreement.

10.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because Nielsen operates an office in Chicago, Illinois, and because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.  The parties also agreed to waive all objections to venue in this Court in their original 2007 services agreement.

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

11.     CF Entertainment is an independent, closely held media company founded in 1995 which operates a robust television production and distribution business.  Specifically, CF Entertainment operates multiple cable networks, including The Weather Channel, which CF Entertainment acquired in March 2018.  The company is part of the Allen Media Group, a collection of integrated and centrally operated media and entertainment companies founded by Byron Allen in the early 1990s.  Mr. Allen is a well-known entrepreneur, comedian and producer in the media industry.  CF Entertainment has grown steadily since its inception, and, through various affiliated companies, currently operates 10 cable television networks that air a range of popular lifestyle and reality programming across the U.S.  CF Entertainment also operates 15 television stations in 11 U.S. cities.

12.     Like most broadcasters, CF Entertainment relies primarily on advertising revenues to fund its operations.  In a model that is common throughout the television industry, advertisers pay CF Entertainment to air commercials during the breaks in programming on the company's networks.  The price charged for an advertisement varies depending on the particular program involved, the day and time of broadcast, and—most importantly—the advertisement's performance, as measured by the number of viewers watching the program when the advertisement airs.  This performance data is especially crucial because CF Entertainment's advertisers do not pay for an advertisement unless and until CF Entertainment provides them with "proof of performance," or measurement data of actual viewers.

13.     Cable networks—whether large or small—do not generate performance data regarding actual viewership themselves.  Instead, networks rely on independent "ratings agencies" to provide the necessary performance measurements.

14.     Nielsen is a global behemoth that provides the primary metrics used to determine the value of programming and advertising in the U.S. television advertising marketplace.  Nielsen so dominates the ratings industry that the terms "ratings information" and "Nielsen ratings" are largely synonymous in the U.S. market, and there is a dearth of viable alternative providers.  Large, national advertisers who buy advertising placements from CF Entertainment, and all other broadcasters and networks, only accept Nielsen ratings as proof of performance, so CF Entertainment and other similar companies must have an agreement with Nielsen to provide ratings services.

15.     Nielsen's stranglehold on viewership data and the fact that it supplies the only currency accepted by advertisers gives it lopsided leverage when entering into ratings agreements with broadcasters such as CF Entertainment.  Nielsen knows that its ratings information is essential

to a network's ability to recover revenue from advertisers, because advertisers only pay based Nielsen's upon proof of performance. If a network cannot provide proof of performance in the form of Nielsen ratings data, the network cannot earn and receive any revenue for its advertisements.

16.     Indeed, Nielsen takes advantage of its monopolistic power through its predatory pricing with smaller companies like CF Entertainment. Nielsen cannot take advantage of bigger market players, like Comcast or WarnerMedia this way, and so it instead preys on the smaller players with less bargaining power. Specifically, Nielsen leverages the fact that it is essentially a lifeline to these smaller companies to extract exorbitant fees. And it has developed a market practice pursuant to which it bleeds these smaller companies dry, while giving much more favorable terms to bigger market participants.

17.     Indeed, CF Entertainment has sought pricing for Nielsen's services that are roughly comparable, as a percentage of overall advertising revenues, to those provided to these larger companies. But Nielsen is intractable, knowing that CF Entertainment has no viable alternative. It maintains these monopolistic and predatory billing practices against CF Entertainment and similarly situated companies, lining its pockets with millions of dollars each month for ratings services that it provides to others at significantly cheaper rates as a percentage of overall advertising revenues.

18.     CF Entertainment first contracted for Nielsen's ratings services in 2007, when the companies entered into the Nielsen Syndication Service Combined National-Local Service Agreement, dated April 12, 2007 (the "2007 Agreement"). Under the 2007 Agreement, Nielsen agreed to provide ratings information and program measurement services to CF Entertainment's programs and networks under an established fee schedule.

19.     At the time the parties entered into that agreement, CF Entertainment primarily aired comedy and courtroom-centered programming in broadcast television.  Nonetheless, the 2007 Agreement recognized that CF Entertainment's portfolio could potentially expand over the course of the contract's five-year term.  To that end, the parties "agree[d] to promptly amend th[e] Agreement to include additional charges for such programming or other activities and to adjust the charges payable" in the event of "an increase or change in the level or nature of the programming or other activities provided by [CF Entertainment]."

20.     Over the course of the next ten years, CF Entertainment continued to grow, beginning with its expansion into cable networks in 2009.  Concurrent with this growth, CF Entertainment and Nielsen periodically revised the 2007 Agreement to provide for gradual increases in the applicable monthly fees, raising them from $25,000 to $40,000 a month.  By and large, these fee increases were accomplished through a series of abridged amendments that simply modified the 2007 Agreement's fee schedule.

21.     By 2016, CF Entertainment had successfully expanded its offering to include seven cable networks, adding networks such as Comedy.TV, Cars.TV and MyDestination.TV to its roster of popular cable channels.  Buoyed by its recent accomplishments, CF Entertainment continued to look forward to aggressive growth in the future.

22.     To that end, CF Entertainment also sought to negotiate a wholesale amendment to its 2007 Agreement with Nielsen.  Instead of amending the 2007 Agreement in piecemeal fashion each time it acquired a new network, CF Entertainment wanted to negotiate a new global fee structure that would encompass Nielsen's ratings services for any of CF Entertainment's existing networks or networks that it might acquire in the future.

23.     Negotiations on the global amendment began in earnest in late 2016. During those negotiations, Mr. Allen made it clear to Nielsen that CF Entertainment did not want to continue renegotiating the fees for measurement services in a piecemeal, serial fashion every year of the amendment's term. Rather, Mr. Allen wanted to establish a fee structure that would apply for the entirety of the new amendment's proposed seven year term, irrespective of any new channels or programs that CF Entertainment ultimately added to its lineup. To address such changes, CF Entertainment initially proposed that, "if [CF Entertainment] purchases a network," the lesser of Nielsen's baseline existing rates or CF Entertainment's negotiated-Nielsen rates would prevail.

24.     In response, Nielsen sought to add language that was substantially equivalent to the arrangement the parties had in place under the original 2007 Agreement, proposing that the parties "agree to promptly amend" the Agreement in the event of an "increase or change" in CF Entertainment's business, "including by acquisition."

25.     CF Entertainment rejected Nielsen's proposal, and reiterated the importance of establishing an agreed-upon fee schedule that would apply to any cable networks added to CF Entertainment's portfolio over the life of the agreement.

26.     On August 2, 2017, the parties reached agreement on the global amendment to the 2007 Agreement (the "2017 Amendment"). Notably, the 2017 Amendment does ***not*** incorporate Nielsen's proposal that the parties agree to further amendments in the event CF Entertainment acquires additional cable networks. Just the opposite: the 2017 Amendment plainly states that, if CF Entertainment requests ratings services for any additional Cable Networks, Nielsen will provide those services at a rate of $41,667 per month for a period of four years. It provides:

In the event Client requests measurement of one or more additional Cable Networks at any time during the term of this Schedule, each such Cable Network shall be added to this Schedule and receive the Services set forth in Sections A.1, A.3, A.4 and A.5 at a Fee of $41,667 per month for a maximum period of forty-eight (48) months, after which Client shall pay an amount for such Cable Network equal to the Fees set forth in the Allocation Grid for the second network, Comedy.TV.

27.     The Allocation Grid referenced in this clause provides a seven-year schedule of fees for Nielsen's ratings services for each of CF Entertainment's networks and programs. Specifically, the fee schedule for Comedy.TV provides as follows:

| *Monthly Fee Schedule* | **Year 1** | **Year 2** | **Year 3** | **Year 4** | **Year 5** | **Year 6** | **Year 7** |
|---|---|---|---|---|---|---|---|
| Comedy.TV | $127,646 | $136,028 | $140,729 | $147,766 | $155,154 | $162,912 | $171,057 |

28.     Accordingly, the 2017 Amendment provides—with no limitation or qualification—that in the event that CF Entertainment adds any cable network, it would have a right to receive Nielsen services for that network for $41,667 per month for no more than four years, after which CF Entertainment would pay for Nielsen's services based on the same fee schedule applicable to CF Entertainment's Comedy.TV cable network.

29.     The 2017 Amendment went into effect on October 1, 2017, and runs through September 30, 2024.

30.     On March 23, 2018, CF Entertainment executed a transaction to acquire a 100% interest in The Weather Channel network from its existing owners, one of whom was NBCUniversal Media, LLC ("NBC").

31.     Prior to the transaction, NBC and Nielsen had a contract pursuant to which Nielsen provided NBC with ratings services for NBC's portfolio of cable networks. NBC then passed on

a monthly charge for those services to The Weather Channel, pursuant to a separate contract between NBC and The Weather Channel.

32. Following the sale, NBC exercised its right to terminate its provision of Nielsen's ratings services to The Weather Channel. Accordingly, at the time of the sale to CF Entertainment, Nielsen had no contractual arrangement with The Weather Channel pursuant to which it was providing ratings services for that network. Nor did CF Entertainment assume any contractual obligation to Nielsen as part of that acquisition.

33. After acquiring The Weather Channel, CF Entertainment's Executive Vice President and General Counsel, Mark DeVitre, emailed Nielsen and requested that Nielsen provide ratings services for The Weather Channel in addition to CF Entertainment's other cable networks. In an email sent on March 18, 2018, DeVitre told Nielsen that CF Entertainment is "adding The Weather Channel to our services being rated in accord with Section B.4. of the recently-executed Amendment to our Agreement. We would request that the changeover be effective as of April 1, 2018."

34. It was Mr. DeVitre's expectation that Nielsen would provide ratings services for The Weather Channel at the rate of $41,677 per month for up to four years, with escalations thereafter—the exact rate schedule set forth in the 2017 Amendment. At the time, the then-general counsel of The Weather Channel, George Callard, was firmly of the view that Nielsen was required to honor the pricing in the 2017 Amendment. Notably, in January 2019, Mr. Callard resigned from CF Entertainment and joined Nielsen as its Chief Legal Officer, but has recused himself from this matter.

35. Nielsen, however, had no intention of honoring the 2017 Amendment. Notwithstanding the unambiguous language of that Amendment—and the fact that CF

Entertainment had specifically rejected Nielsen's proposed language providing for further amendments upon CF Entertainment's acquisition of new networks—Nielsen refused to provide ratings services for The Weather Channel at the contractually specified rate. Instead, in an email dated April 24, 2018, a Nielsen Senior Vice President and Client Business Partner staked out the untenable position that the rate structure in the 2017 Amendment only relates "to networks that were not measured by Nielsen that may be added for incremental measurement (similar to Justice Central or Comedy .TV) during the term of the amendment." Because The Weather Channel was previously "measured" by Nielsen (albeit under a different contract with a different counterparty), Nielsen stated that it was not subject to the schedule set forth in the 2017 Amendment.

36.     Nielsen's attempt to limit the 2017 Amendment to networks that were not previously measured by Nielsen flies in the face of the plain language of that Amendment. Indeed, the language of the 2017 Amendment could not be clearer:  If CF Entertainment "requests measurement of one or more additional Cable Networks at any time during the term of this Schedule," Nielsen will provide such measurement in accordance with the agreed-upon fee schedule:  (i) $41,667 per month for the first 48 months; and (ii) the rate in the monthly fee schedule applicable to Comedy.TV network for each year thereafter. Whether Nielsen previously "measured" a network added to CF Entertainment's portfolio has nothing to do with the applicability of the fee schedule in the 2017 Amendment.

37.     Knowing that CF Entertainment would be unable to operate its business without Nielsen's ratings services, Nielsen refused to provide ratings services for The Weather Channel for $41,677 per month, the rate specified in the 2017 Amendment; instead, Nielsen demanded monthly payments of nearly *$500,000*—more than *ten times* what was owed under the 2017 Amendment.

38.    Without any viable alternative for obtaining viewership performance data, CF Entertainment was forced to either accede to Nielsen's exorbitant demands or forego Nielsen's ratings services for The Weather Channel.  This was a non-choice for CF Entertainment—without Nielsen's ratings services, there would be no advertising revenues from The Weather Channel, and without advertising revenues, there would be no Weather Channel.

39.    On November 16, 2018, under threat of service termination for The Weather Channel, CF Entertainment reluctantly signed an additional "amendment" (the "2018 Amendment").  Under this 2018 Amendment, Nielsen forced CF Entertainment to acknowledge that Nielsen would add The Weather Channel to the list of networks for which it provides ratings services, subject to a "negotiat[ion]" of a fee schedule for that network by the expiration of the amendment, April 30, 2019.  Of course, the outcome of that "negotiation" was pre-ordained: Nielsen intractably demanded that CF Entertainment pay Nielsen $475,000 per month through April 2019.  The only silver lining for CF Entertainment was its expectation that Nielsen's fees for providing ratings services for The Weather Channel would revert back to the fee schedule in the 2017 Amendment upon expiration of the 2018 Amendment.  But Nielsen had other ideas.

40.    Since the expiration of the 2018 Amendment, Nielsen still has refused to provide ratings services pursuant to the fee schedule agreed upon in the 2017 Amendment.  Instead, Nielsen has continued to demand monthly payments amounting to nearly half a million dollars, and has insisted that CF Entertainment pay its exorbitant $475,000 monthly rate indefinitely.  In total, Nielsen is effectively using its monopolistic power and predatory practices to extort over $12 million in extra-contractual payments from CF Entertainment.

41.    At the time, CF Entertainment did not resort to formal legal proceedings because of fear of Nielsen's retribution: if Nielsen carried through on its threat to terminate ratings services,

it would mean the end of The Weather Channel. So, instead, CF Entertainment made continual efforts throughout the summer and fall of 2019 to negotiate a long-term solution consistent with the terms to which the parties already had agreed in the 2017 Amendment. Those "negotiations," however, came to a head in the fall of 2019, when CF Entertainment insisted on a negotiated resolution significantly lower than the $475,000 that Nielsen continued to demand.

42. In a September 11, 2019 email to CF Entertainment, Nielsen's Deputy Chief Legal Officer, Eric Rubenstein, adamantly refused to abide by the terms of the 2017 Amendment, again invoking the "measured network" fiction: "Any argument that the provision in the current agreement relating to a $41,667 per month flat fee for requesting measurement on new cable networks is entirely non-applicable in this situation since The Weather Channel has been a measured network for decades." Rubenstein then threatened to "indefinitely suspend all services in the event we have not received full payment of all outstanding invoices by September 20, 2019."

43. DeVitre responded by confirming that the 2018 Amendment terminated at the end of April 2019, at which time "the fee reverts to that recited in the [2017 Amendment]." He further confirmed that "none of what you say was ever communicated to Entertainment Studios until we exercised our right to add [The Weather Channel], nor is any of it present in the 2017 amendment, or any other Nielsen document in our contract, all of which were drafted by Nielsen on Nielsen contract forms."

44. In the fall of 2019, CF Entertainment ceased paying Nielsen the monthly $475,000 demanded for ratings services for The Weather Channel, and instead began paying for such ratings services in accordance with the fee schedule of the 2017 Amendment. Nielsen did not take kindly to CF Entertainment's disobedience.

45.    On October 11, 2019, Nielsen suspended all services it was providing to CF Entertainment for The Weather Channel—effectively paralyzing CF Entertainment and preventing it from realizing any revenue for the duration of the suspension.  On that same day, Nielsen's outside counsel sent a letter to CF Entertainment confirming the suspension of services.  With no choice but to yield to Nielsen's power play, CF Entertainment wired to Nielsen the alleged "outstanding" balance—$3,471,867.22—*that same day*.

46.    In a response acknowledging the payment, Rubenstein dropped all pretense that the parties' "negotiation" was anything of the sort, and instead made clear that Nielsen's extortion of CF Entertainment would continue:  "The ongoing services will be subject to the November 2018 agreement which will continue to operate on a month-to-month basis until a new agreement is reached between the parties for The Weather Channel."  Thus, without any contractual basis— even an unconscionable one—Nielsen sought to stretch the term of its demanded $475,000 monthly payments indefinitely.

47.    This back-and-forth has only repeated since October 2019: CF Entertainment has attempted to negotiate a resolution, while Nielsen has continued to take the position that it is owed nearly $500,000 per month.  And just as before, Nielsen threatened to shut off its services to CF Entertainment if no such payment was made.  Those threats came to head in the weeks prior to the filing of this lawsuit when Nielsen demanded payment for the $2.375 million "balance" that accrued under its extortionate fee schedule.  Once again, CF Entertainment was forced to succumb to Nielsen's demands.  On April 17, 2020, CF Entertainment wired $2.375 million to Nielsen to ensure that Nielsen did not pull the plug on its ratings services—and the lifeline of its business.

48.    CF Entertainment has had enough.  It will no longer endure Nielsen's bullying tactics or Nielsen's inexcusable failure to honor the terms of the 2017 Amendment, which are still

in force and effect. Nielsen should be held to the terms of the 2017 Amendment, and should be held liable in damages for the damages wrought by the exorbitant fees that Nielsen extorted from CF Entertainment through its monopolistic, predatory, and bullying practices. Governmental authorities have also recently contacted CF Entertainment to talk about Nielsen's anticompetitive practices.

### FIRST CAUSE OF ACTION
**(Declaratory Judgment – Enforceability of 2017 Amendment)**

49.     CF Entertainment repeats and realleges the allegations of the foregoing paragraphs as though fully set forth herein.

50.     The 2017 Amendment is a valid, enforceable contract between CF Entertainment and Nielsen. The term of the 2017 Amendment is from October 1, 2017 through September 30, 2024.

51.     Section B.4 of the 2017 Amendment expressly provides that measurement services and ratings information for any additional Cable Networks will be charged at a monthly rate of $41,667 for a period of no longer than 48 months.

52.     The 2017 Amendment provides that, after the expiration of 48 months from the initial measurement month for any additional Cable Network, such Cable Network will be subject to the same seven-year fee schedule as the one governing Comedy.TV. Thus, for any additional Cable Network, Nielsen is obligated to charge monthly fees of $41,667 for the first four years, followed by monthly payments in year five of $155,154; monthly payments in year six of $162,912; and monthly payments in year seven of $171,057.

53.     Beginning in April 2018, Nielsen was obligated to provide ratings and measurement services to CF Entertainment for The Weather Channel pursuant to this agreed-upon schedule.

54. Nielsen refused to honor its contractual obligations under the 2017 Amendment to provide measurement and ratings services to The Weather Channel pursuant to these terms. Instead, Nielsen demanded that CF Entertainment pay roughly ten times more, charging the exorbitant monthly rate of nearly $500,000 for each month of service since April 2018. Wielding the credible threat of service termination, Nielsen demanded that CF Entertainment enter into the punitive 2018 Amendment, memorializing its unconscionably higher rates. It has since taken the position that this 2018 Amendment "ratified" the parties' agreement regarding the payment of Nielsen's services for The Weather Channel indefinitely.

55. There is a real and actual controversy between CF Entertainment and Nielsen regarding whether the 2017 Amendment, including its fee schedule for "additional Cable Networks," is a valid and enforceable contract that remains in full force and effect.

56. Pursuant to 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57, CF Entertainment seeks a declaratory judgment for the purpose of determining and adjudicating questions of actual controversy between the parties.

57. CF Entertainment has no adequate remedy at law and monetary damages are insufficient to address the injury CF Entertainment has suffered and will continue to suffer.

58. For the foregoing reasons, CF Entertainment requests a declaratory judgment that (i) the 2017 Amendment is valid and enforceable, and (ii) Nielsen is required to provide ratings services for The Weather Channel in accordance with the terms of that Amendment.

59. CF Entertainment further requests injunctive relief during the pendency of this action enjoining Nielsen from terminating any services it is currently providing to CF Entertainment or in any way altering the nature of the services currently provided, including any services it is currently providing for The Weather Channel.

## SECOND CAUSE OF ACTION
### (Declaratory Judgment – 2018 Amendment Void as Unconscionable Contract)

60.     CF Entertainment repeats and realleges the allegations of the foregoing paragraphs as though fully set forth herein.

61.     In November 2018, Nielsen demanded that CF Entertainment enter into the punitive 2018 Amendment, threatening to cut off The Weather Channel's measurement services if CF Entertainment did not oblige.  CF Entertainment—wholly reliant on Nielsen's data in the absence of any industry-acceptable alternative providers—had no choice but to agree to the November 2018 Amendment, notwithstanding its arbitrary draconian terms.

62.     By its terms, the 2018 Amendment expired on April 30, 2019.  However, at all times since that date, Nielsen has continued to charge CF Entertainment for ratings services pursuant to the terms of the 2018 Amendment—all the while using threats of service termination as a way to coerce CF Entertainment into paying these fees.

63.     There is a real and actual controversy between CF Entertainment and Nielsen regarding whether the 2018 Amendment was a valid and enforceable contract that: (i) altered the rights of the parties during its purported six month term, ending on April 30, 2019; or (ii) has altered the parties rights and obligations in any manner since that date.

64.     Pursuant to 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57, CF Entertainment seeks a declaratory judgment for the purpose of determining and adjudicating questions of actual controversy between the parties.

65.     For the foregoing reasons, CF Entertainment requests a declaratory judgment that (i) the 2018 Amendment is an unconscionable contract of adhesion and therefore void; and (ii) the 2018 Amendment is of no force and effect.

66.    CF Entertainment further requests injunctive relief during the pendency of this action enjoining Nielsen from terminating any services it is currently providing to CF Entertainment or in any way altering the nature of the services currently provided, including any services it is currently providing for The Weather Channel.

<u>**THIRD CAUSE OF ACTION**</u>
**(Breach of Contract – 2017 Amendment)**

67.    CF Entertainment repeats and realleges the allegations of the foregoing paragraphs as though fully set forth herein.

68.    The 2017 Amendment is a valid, enforceable contract between CF Entertainment and Nielsen.  The term of the 2017 Amendment is from October 1, 2017 through September 30, 2024.

69.    Section B.4 of the 2017 Amendment expressly provides that measurement services and ratings information for additional Cable Networks will be charged at a monthly rate of $41,667 for a period of up to four years.

70.    The Weather Channel is an additional Cable Network acquired by CF Entertainment in March 2018, after the effective date of the 2017 Amendment.

71.    To date, Nielsen refuses to honor the payment provisions set out in the 2017 Amendment, despite the fact that the Amendment remains in effect until 2024.

72.    As a result of Nielsen's unlawful conduct, CF Entertainment has been forced to pay egregiously inflated sums for the relevant measurement services, and has been deprived the benefit of its bargain.  These sums have not only caused CF Entertainment to lose significant equity value, but also to lose corporate opportunities, as it was forced to instead spend its available cash on these exorbitant fees.

73.     For the foregoing reasons, CF Entertainment is entitled to damages, in an amount to be proven at trial, but no less than $30 million, which represents, among other things: the difference between the $41,667 monthly rate that CF Entertainment agreed to pay in the 2017 Amendment and the illegitimate rates that it was forced to pay beginning in April 2018 up through the date of this filing; and other damages proximately caused by Nielsen's conduct, including the loss of corporate opportunities and damages to CF Entertainment's enterprise value.

**FOURTH CAUSE OF ACTION**
**(Violation of California Unfair Competition Law, Business and Professional Code §§ 17200 et seq.)**

74.     CF Entertainment repeats and realleges the allegations of the foregoing paragraphs as though fully set forth herein.

75.     California Business & Professions Code §§ 17200 *et seq*. prohibits acts of unfair competition, including any "unlawful, unfair or fraudulent business act or practice."

76.     A business act or practice is "unfair" under the statute if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.

77.     A business act or practice is "unlawful" under the statute if it comprises acts that violate state or federal law.

78.     CF Entertainment relies on Nielsen's measurement services to obtain the ratings information that is essential to secure its advertising revenue and, by extension, run its business.

79.     CF Entertainment does not have viable alternative providers from which it can obtain the necessary ratings information, as all of CF Entertainment's national advertisers require Nielsen's ratings.

80.     Nielsen is aware of CF Entertainment's reliance on its ratings information, and has unscrupulously used this reliance to extort a windfall at CF Entertainment's expense.

81.     Nielsen has engaged in unfair business practices by demanding that CF Entertainment refrain from exercising its contractual right to pay the agreed-upon $41,667 monthly rate, and instead charging CF Entertainment extortionate monthly rates of nearly $500,000.

82.     Nielsen has further committed unlawful and unfair business practices by threatening to cut off The Weather Channel's measurement services unless CF Entertainment continued to pay its excessive fees.

83.     CF Entertainment has suffered actual damages due to Nielsen's unfair practices, chiefly in the form of the excessive fees over and above the $41,667 monthly rate it previously agreed to pay.  These excess fees amount to over $5 million per year, and currently total over $12 million in aggregate.  CF Entertainment has also been injured in the form of a significant loss in the value of its equity, and the loss of corporate opportunities, as it was forced to instead spend its available cash on these exorbitant fees.

84.     Nielsen engaged in unfair and unlawful business acts and practices in violation of California Business & Professions Code §§ 17200 *et seq.* by using threats of a suspension of its ratings services to extract exorbitant monthly fees from CF Entertainment, in clear violation of the terms of the 2017 Amendment.  As a result, Nielsen unlawfully attempted to and/or did in fact commit extortion as set forth in California Penal Code sections 518, 519, 523, 524, the Hobbs Act, civil extortion and civil attempted extortion by intentionally and unlawfully using fear (the threat of the suspension of service) to induce CF Entertainment to consent to pay for Nielsen's exorbitant fees.

85.     Nielsen's predatory pricing practices are: (i) immoral, unethical, oppressive and substantially harmful to CF Entertainment; and (ii) the justification for Nielsen's practices and conduct is outweighed by the gravity of the injury to CF Entertainment.

86.     For the foregoing reasons, Nielsen's violations serve as unlawful predicate acts for purposes of California's Business and Professions Code §§ 17200 *et seq*., and remedies are provided therein under Business & Professions Code §§ 17203.

87.     CF Entertainment is entitled to injunctive relief during the pendency of this action enjoining Nielsen from terminating any services it is currently providing to CF Entertainment or in any way altering the nature of the services currently provided, including any services it is currently providing for The Weather Channel.  It is further entitled to damages equal to the harm caused by the extortionate sums it has been forced to pay to Nielsen.

## FIFTH CAUSE OF ACTION
### (Unjust Enrichment)

88.     CF Entertainment repeats and realleges the allegations of the foregoing paragraphs as though fully set forth herein.

89.     Nielsen has unfairly benefitted from its extortionate conduct to extract exorbitant monthly payments from CF Entertainment, notwithstanding the clear terms of the 2017 Amendment.

90.     CF Entertainment is entitled to damages as a result of Nielsen's unjust enrichment, including the payment of all fees it has paid for services rendered for The Weather Channel over and above the fees set forth in the 2017 Amendment.

## DEMAND FOR JURY TRIAL

91.     Pursuant to Federal Rule of Civil Procedure 38, Plaintiff CF Entertainment Inc. demands a jury trial of all issues triable by jury.

## PRAYER FOR RELIEF

92.     Wherefore, Plaintiff CF Entertainment respectfully requests that the Court:

        a.   Preliminarily enjoin, during the pendency of this action,
             Nielsen from terminating any services it is currently

providing to CF Entertainment or in any way altering the nature of the services currently provided, including any services it is currently providing for The Weather Channel;

b. Declare that the 2017 Amendment remains in full force, and that Nielsen is required to provide ratings services for The Weather Channel in accordance with the terms of that Amendment;

c. Declare that the 2018 Amendment was null and void *ab initio* because it was an unconscionable contract;

d. Award CF Entertainment damages in the amount of at least $30 million plus interest, costs and attorneys' fees in the amount to be proved at trial; and

e. Grant CF Entertainment any other further relief that this Court finds just and proper.

April 17, 2020                          Respectfully submitted,
Chicago, Illinois


                                        /s/ Sean M. Berkowtiz
                                        Sean M. Berkowitz (Bar No. 6209701)
                                        LATHAM & WATKINS LLP
                                        330 North Wabash Avenue, Suite 2800
                                        Chicago, Illinois 60611
                                        Tel: (312) 876-7700
                                        Facsimile: (312) 993-9767
                                        sean.berkowitz@lw.com

                                        Eric F. Leon (*pro hac vice* forthcoming)
                                        Zachary Rowen (*pro hac vice* forthcoming)
                                        Sarah Burack (*pro hac vice* forthcoming)
                                        LATHAM & WATKINS LLP
                                        885 Third Avenue, Suite 1000
                                        New York, New York 10022
                                        Tel:  (212) 906-1200
                                        Facsimile: (212) 751-4864
                                        eric.leon@lw.com
                                        zachary.rowen@lw.com
                                        sarah.burack@lw.com


                                        *Attorneys for Plaintiff CF Entertainment,*
                                        *Inc.*